Good morning, Your Honors. May it please the Court, Daniel Habib, Federal Defenders of New York, on behalf of Kevin Fagan. In this circumstantial case, the government did not Mr. Fagan's knowledge that his suitcase contained a controlled substance in particular as opposed to contraband in general. The government offered none of the forms of proof approved by this Court's concealed contraband cases. No drug-related conversations to which Mr. Fagan was a party. No documents or drug records implicating Mr. Fagan. No evidence that he enjoyed a position of trust or authority in this criminal enterprise. No payments to Mr. Fagan reflecting the value of the cocaine packed in his suitcase. No explicitly self-incriminating statements, no cooperating witness testimony, and no physical or forensic evidence tying Mr. Fagan to the cocaine hidden in his suitcase. But what the record does show is the defendant's sole possession of a valuable illegal commodity, which we have said in our precedent can support a reasonable inference that the defendant knows what it is he is, with which he has been entrusted. We said that in Anderson. That case collects the other cases. Why isn't that enough? So I think the Anderson case refers to sole possession not as probative in and of itself, but as one in a series of inferential steps that leads you to knowledge. It can support a reasonable inference that the defendant knows what he's been entrusted with. So let me address three distinctions of Anderson. First, Anderson says that sole possession is evidence or can be evidence that the defendant has been placed in a position of trust within the conspiracy. And it's that position, not mere possession, that allows an inference of knowledge. In Anderson, the court was... Why wasn't this a position of trust? It was $100,000 worth of cocaine. So the evidence on the value of the cocaine covered a wide range. It was $9,000 worth of cocaine in St. Lucia, where it was presumably packaged. And the government told the jury in its summation that Mr. Fagan was, quote, on someone else's time and, quote, not calling the shots here. There was other evidence. He lied. He behaved suspiciously. He said something about visiting his son. There's the voice messages from the day before. He had a burner phone. Why, when you look at all of that together, why isn't that enough to show that he knew exactly what he was carrying? I'm happy to address each of those pieces of evidence. With respect to the... Absolutely. Each piece of evidence is addressed individually, and this court considers the totality of the evidence in the light most favorable to the government, of course. The phone calls, or rather the voice messages and WhatsApp messages with Mr. McCurdy, I think can usefully be analogized to the phone evidence in this court's decision in Rodriguez. That is, in Rodriguez, this court said that where there was extensive phone and pager traffic between the defendant and the principal in the heroin distribution conspiracy, and a jury could reasonably infer that the parties discussed logistics of the drug transaction, including how the defendant would conduct counter-surveillance and where the defendant would meet the principal, that that was insufficient. The documents, they're reasonable, but couldn't a jury reasonably find knowledge based on these circumstances? So I think... It's not whether we agree or not, it's whether a reasonable jury could so find. Of course. And of course, Rodriguez was applying the same legal standard to a similar set of facts, i.e., a series of phone calls as to which a jury could reasonably have inferred that they concerned the mechanics of a drug transaction and the effectuation of a legal scheme, but not that the calls concerned controlled substance in particular. Here, we actually have the contents of the communications. So in that sense, Mr. Fagan is on stronger footing than the defendant in Rodriguez. We know that the calls didn't concern drugs by name. As to Mr. Fagan's conduct at the airport, Judge Chin, two points. One, Mr. Fagan was visiting his son. He did have contact information for his son's mother stored in his phone, and it would have made no sense for someone in Mr. Fagan's position to have concealed that fact. But he did conceal it. And the inference that can be drawn from it is that he knew that what he was doing was trafficking contraband, and he didn't want to implicate family members in it. So he didn't tell the — he didn't provide the contact information to the authorities. I think — I think the reasonable inference to be drawn from that evidence is that a person who is visiting a son, who is celebrating his sixth birthday a few days later, and who does hold a plane ticket that will cover his stay through the child's birthday, and who has been in contact with the child's mother, and who has texted family members while in St. Lucia to indicate that he's visiting his son for his birthday, and who does, in fact, stay with his child and his child's mother during the pendency of the trial in this case, the only reasonable inference I can draw from that is that Mr. Fagan, like most people with a cell phone, does not have a phone number on the top of his head for even a close friend. But even if Your Honor is correct that Mr. Fagan's answer demonstrates — I'm going to view this in the light most favorable to the government now. Absolutely. And the view would be that he did not disclose his contact information, and that that is further evidence that he understood that he was involved in illegal activity. So — and accepting the premise of Your Honor's question that a rational jury could so infer, it's evidence that Mr. Fagan was aware of his participation in some illegal activity. Then you start to put it together with he's been entrusted with a particular item that's valuable. Then he makes either a false statement or an omission. He acts nervously. He acts suspiciously. In Tran, we said that's enough to support an inference that the defendant knew about drugs in a hidden compartment. Two responses, Your Honor. First, backing up to the sole possession and the Anderson argument, I did want to articulate that the distinction was with Anderson. First, the cocaine or the ecstasy in Anderson is worth really 100 times what the cocaine in this case was worth. You're using the St. Lucia value, and the U.S. wholesale value was between $80,000 and $140,000. And again, looking at it in the light most favorable to the government, he's been entrusted to come to the United States with an item that on these shores is worth the larger amount. Fair point, Your Honor. Anderson also said, and the majority opinion emphasized, that there was testimony that the principles in that conspiracy in particular would not have entrusted contraband of that value to someone who was not trusted. And the court emphasized that fact at least a half a dozen times. In addition, the contraband in Anderson was easily accessible in a duffel bag. Here, the contraband was secreted in a hidden compartment that would require disassembling the suitcase to access. But I'm not sure how that helps you. You concede that he knew he had contraband, so I would assume the question is whether he could have thought that the hidden compartment had diamonds or whatever else the, you know, contraband would be. But the point is that in these circumstances, we have said this combination of factors present here is sufficient. So two responses, Your Honor. I think the relevance of the fact that the contraband in this case was inaccessible is, one, it diminishes the strength of the inference that he enjoyed a position of trust. In Anderson, this Court said that because the courier could have opened up the duffel bag and inspected or otherwise disposed of the contraband, that suggested trust. I'm not sure I understand that argument. If you agree that he knew that the evidence supports that he had contraband, the fact that it was well hidden doesn't have anything to do with whether he knew what it was. It just means that this was a more sophisticated group than in Anderson. Or that the contraband had to be well hidden and its nature concealed from him because he was not a principal in the conspiracy. The problem that you run into, of course, is when you look at the videotape, he turns, the suspicious activity coincides with precisely when the customs agent is about to open that part of the secret, you know, the secret part of the suitcase. So Mr. Fagan turned. The testimony was, and the video reflects, that as customs officer Val Verde began to unzip the lining, Mr. Fagan stood up, turned around, and sat on the counter with his back to the officer. As he did so, however, he looked over his shoulder at the officer. He made eye contact with the other officers who were in the vicinity. Arguably, more suspicious behavior. And critically, he stood back up and turned around to face Officer Val Verde before the cocaine was discovered. You can't argue to us that the jury couldn't view this as very suspicious behavior. I mean, you can argue, and your counterpart below undoubtedly did, that it shouldn't weigh for much, but we have to assume the jury gave it the weight that it could bear. And so let me turn to Tran. I think you can go ahead, but then you'll use your time now. Do you want to reserve it for rebuttal? I'll reserve. Thank you, Your Honor. Thank you. May it please the Court. My name is Lindsay Gerdes, and I'm appearing on behalf of the United States. The Court should affirm Fagan's trial conviction because in viewing the evidence in its totality, in the light most favorable to the prosecution, the government presented ample evidence, as your Honors have alluded to, from which a rational juror could infer beyond a reasonable doubt Fagan's knowledge. And I'll highlight five of those ways, and the Court has alluded to, again, many of them already. First, Fagan was in sole possession of the suitcase. He claimed ownership of the suitcase. He said he packed the suitcase, the contents belonged to him, and that no one gave him anything to bring into this country. If a defendant possesses cocaine, a legitimate inference I would suggest that the jury could draw is that they know what they possess is cocaine. Going beyond that, no one- We haven't always been willing to find that inference reasonable when there were other circumstances suggesting it was under someone else's control at the same time. Exactly, your Honor. And this is a sole possession case. No one traveled with Fagan into this country. He was traveling alone. Again, a fact that the jury could rely on in drawing the inference that he was placed in a position of trust. Second, Fagan was in sole possession of that suitcase for days before he traveled into this country when he was in St. Lucia. Third, he behaved suspiciously at the airport, telling CBP officers that the purpose of his trip was to visit his son for his birthday, yet he did not have an address or a telephone number. This Court held in Tran that when an individual was going to see a casino in an area that he did not frequent, that behavior was suspicious and could lead to an inference of knowledge. In this case, you have something more than that because it's not just suspicious that Fagan didn't have a telephone number, didn't have an address. You have a direct lie to the CBP officers under very normal circumstances. These were not unusual circumstances that Mr. Fagan found himself in. He was at a border crossing. This is a typical place a person finds themselves when they're traveling internationally. Furthermore, when he lied to the officer, the officer was merely moving the clothes from one side of the suitcase to the other. He hadn't even begun unpacking the suitcase at that point. And we also know that Fagan had his child's mother's telephone number in his phone. And the appellee suggests that maybe he didn't have the phone number committed to memory. And although the government does not have to disprove every hypothesis that is consistent with innocence, he had his telephone in his actual possession when the officer was asking him these questions. You can see him on the video with a telephone in his hand. Going beyond that, the fourth way we know that the defendant had knowledge is because of his suspicious behavior in turning his back, as Your Honor indicated, the moment the suitcase was unzipped. An expression of essentially defeat. And again, suspicious behavior given the timing. He had been standing there for approximately 5 minutes and 47 seconds before he sat down at that exact moment when the suitcase was open. Fifth, the government presented an array of corroborating evidence in an abundance of Fagan's trip. There were the voice messages between Fagan and Rudolph McCurdy the day before they left for the flight, in which Fagan was saying, we have a lot of things to do. And he references the things that they've been discussing for the last two or three days, which is essentially the two or three days is when they bought their ticket to travel from St. Thomas to St. Lucia. Beyond the voice message, we have the WhatsApp messages that were entered into evidence at trial. Fagan and McCurdy exchanged messages confirming a meeting between Fagan and an unidentified man in Fagan's hotel room. A logical juror could have drawn the inference, a reasonable inference, that Fagan himself actually met with the person who gave him the cocaine to bring to this country based on that evidence. You also have more. You have the WhatsApp messages once McCurdy has traveled to the United States when Fagan is still in St. Lucia, where he's asking, is everything safe? There's the note entered into Fagan's phone on the day of his trip, Radisson JFK, a hotel that was very close to the airport. Likely an inference the jury could have drawn is that's where he was going to be delivering the drugs. And finally, as this court has alluded to, you have the high value of the contraband that Fagan was placed in a position of trust to transport alone. There was simply tremendous amount of evidence from which a rational juror could infer his guilt. And if the court has no further questions, I can sit down. I lost track of what's going on today. But do blind mules, who may not know, who actually don't know usually what they're carrying, are they always accompanied by an actual drug dealer? Your Honor, I don't know the answer to that question. There was no evidence in the record about blind mules for the jury to rely on. The jury instead was presented with a significant amount of evidence showing that Fagan had his eyes wide open during this trip and that he knew exactly what was in his suitcase. This is a knowing courier situation here. Thank you, Your Honors. I believe you reserve two minutes for rebuttal. Thank you, Your Honor. Turning to the question of sole possession, I do want to address the Tran case. And I think it's probative that Tran expressly says sole occupancy of a vehicle in which contraband is secreted, in that case in the ceiling lining of the car, was not sufficient to prove knowledge in that case. There had to be other circumstances. In addition, the court in Tran noted that the defendant had testified in that case, and a jury's disbelief of a defendant's testimony offers an additional basis for an inference of guilty knowledge. I do... That's because the occupancy of the vehicle was viewed as somewhat different from possession of suitcases. It's difficult to understand why that would be. If anything, a person with sole occupancy of a vehicle in which contraband is secreted would appear more able to flee with the contraband than... Sole occupancy of a vehicle can be quite transitory, whereas possession of a suitcase while it is being transported internationally is viewed as something that someone would not be entrusted to do without knowing what the contents were. And a person with sole occupancy of a vehicle containing contraband, I would submit, is more able to flee with the contraband than was Mr. Fagan. But I do want to resist this broader point about the significance of sole possession. And I do want to point out to the court that in both Lorenzo and Torres, there was evidence that the defendants were in sole possession of the contraband. In Lorenzo, the defendants were set to assume possession of what they thought was 260,000 worth of cocaine. So more than the cocaine at issue in this case. I might agree with you that sole possession by itself is insufficient, given the intelligence of narcotics traffickers. But there's all this other evidence that your adversary alluded to and listed that seems to me pretty compelling. So this is not just a sole possession case. There are many other indicia. Of course not, Your Honor. I completely agree. It's not just a sole possession case, but it was the thrust of the government's response and hence of my presentation today. As to the other individual pieces of evidence, we've addressed them. And I would simply encourage this court to consult Torres and then Judge Sotomayor's opinion in Samaria, which lay out at least a half a dozen forms of evidence that prove knowledge in concealed contraband cases, all absent here. What wouldn't this defendant be... What wouldn't conviction be supported on a theory of conscious avoidance? The government did not seek and the court did not give a conscious avoidance instruction. Well, the fact that it didn't give the instruction might not be relevant to whether it's a matter of sufficiency if the evidence was sufficient to say that, you know, any reasonable person carrying contraband would be expected to know what it was. Are you suggesting that this would not be sufficient on a theory of conscious avoidance? So I don't think this court can affirm the denial of the Rule 29 motion on that ground because the jury was not asked to make that finding. All right. Thank you. Thank you, Your Honors. I haven't argued it in any event. Thank you.